[Civ. No. 3923.  Third Appellate District.—November 18, 1929.]

EDMOND DRURY et al., Respondents, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

E. B. Drake for Respondents.

THOMPSON (R. L.), J.—This is an appeal from a judgment for damages for personal injuries sustained by the plaintiff Ethel Drury as a result of falling from the platform of a street-car while it was rounding a curve in the track. The evidence as to the material issues was conflict-

ing. The defendant challenges certain instructions as erroneous.

The plaintiff Ethel Drury was a teacher of music in the public schools at Los Angeles. About 4:30 o'clock in the afternoon of October 6, 1925, she attempted to board an east-bound Crown Hill street-car at the corner of Broadway and First Streets for the purpose of returning to her home. At this corner the car made an abrupt left-hand turn from First Street northerly on to Broadway. It had stopped on First Street opposite a safety zone just before proceeding to round the curve on to Broadway. Several passengers, among whom was the plaintiff Ethel Drury, boarded the car at this point. She was the last person to step upon the car at this station. Regarding the circumstances which led to the accident there is a serious dispute. According to the testimony of Mrs. Drury and several of her witnesses the car was at a full stop at this safety zone when several passengers boarded it. All had reached the platform of the car except Mrs. Drury. She secured a place on the steps of the car before it started, grasping the handle-bar with her left hand. A portly lady was entering the car ahead of her. While she was in this position the car suddenly started and swerved around the curve at quite a rapid rate of speed, estimated by Mrs. Drury to have been about ten miles an hour. The sudden start and jerking.of the car threw her from her balance and she slipped from the step, still clinging to the handle-bar. In this predicament she· was dragged a distance of twelve or fifteen feet. Her weight pulled her hand down along the bar until her feet were caught under the rear wheels and crushed. Screaming, she released her hold and fell unconscious to the pavement. After rounding the curve the car stopped. An ambulance was called and she was taken to the emergency hospital. It was ascertained that her feet and ankles were crushed and that she was seriously injured.

There is no controversy regarding the sufficiency of the evidence to support the judgment, nor is the amount of the verdict questioned. The defendant denied the allegations contained in the complaint of negligence on its part and, upon the contrary, affirmatively charged the plaintiff with contributory negligence in attempting to board the car while it was in motion. The language of the answer in this re-

gard is as follows: "The said plaintiff carelessly and negligently . . . undertook to board a moving street car of the defendant . . . and so carelessly and negligently conducted herself as aforesaid, that she fell to the pavement and . . . that the injuries . . . resulting therefrom . . . were directly, proximately and concurrently contributed to by the fault . . . of said plaintiff Ethel Drury as aforesaid." No act of alleged contributory negligence other than the attempt to board the car while it was in motion was charged or proved.

The appellant challenges as erroneous three instructions which were given to the jury at the request of the plaintiff. It is claimed two of these instructions violate the rule announced in *Pierce* v. *United Gas & Elec. Co.*, 161 Cal. 176 [118 Pac. 700]; *Keena* v. *United Railroads of San Francisco*, 57 Cal. App. 124 [207 Pac. 35], and other California authorities, to the effect that it is erroneous to recite facts of a case in a charge and direct the jury to render a verdict in favor of a particular party in the event they find these specific facts to be true, unless the instruction embraces all the circumstances or features involved in the case which are necessary to fix legal liability upon the opposite party. In the present case, it is asserted that these challenged instructions omitted all reference to the defense of contributory negligence upon which the defendant relied. This was true of the instruction which was condemned in the Keena case, *supra*. In that case, however, the defendant railroad company relied upon the defense for the killing of an infant child in a street railway accident on the assertion that the parents of the child were guilty of contributory negligence in permitting it to play in the street where the cars were operated. The instruction in that case did utterly fail to consider the defense of contributory negligence. It merely informed the jury that "If . . . the gripman . . . saw said child upon or near the tracks and did not give any warning of his approach, and . . . that he was negligent in not doing so, and that such negligence proximately contributed to its death . . . " judgment should be rendered in favor of the plaintiff. Clearly, this was erroneous. Obviously the gripman of the defendant railroad company may have been guilty of all the negligent acts which were recited in the instruction; these acts may have

been the proximate cause of the death of the child, and still if the negligence of its parents in permitting it to play in a place of danger contributed to the cause of its death, the company would not be liable to the parents in damages. Accepting all the facts related in the Keena instruction as true, the contributory negligence relied upon in that case might still exempt the company from liability. For that reason it was error to predicate a declaration of the right of the plaintiff to recover judgment solely upon the facts recited. Similar omissions of facts vital to issues involved led to a declaration that instructions which were given in the other cases cited by the appellant in this case were erroneous. This criticism does not apply to the first instruction which is challenged in the present case. This instruction is readily distinguishable from that which was involved in the Keena case. In the present case the defendant relied upon the defense of contributory negligence consisting solely of a charge that the plaintiff, Ethel Drury, recklessly tried to board the street-car while it was in motion. This instruction specifically based its declaration of plaintiffs' right to a judgment upon facts which are in conflict with, and absolutely precludes the possibility of, the existence of the contributory negligence upon which the defendant relied. If the jury found the car was stationary when it was boarded by Mrs. Drury, then by necessary implication the jury must have found that defendant's charge of contributory negligence was not true. This left no uncertainty as to the law. The jury could not have misunderstood its application. The defendant was deprived of none of the force of its defense of contributory negligence. Indeed, the jury were specifically charged in another instruction, which was given at the request of the defendant, that if they found from the facts that Mrs. Drury tried to board the car while it was moving, she *could not recover damages*. The first instruction complained of read in part: " . . . It was the duty of the defendant, . . . to have used the highest or utmost degree of care for her safety," and, therefore, "If you find that the plaintiff, Ethel Drury, had hold of the handle-bar and was on the step of said car . . . *when said car was standing still*," and that while she was in this position the car was negligently started and that she was thereby thrown from the step of the car and injured, a judgment should be rendered in her

favor. This is a correct statement of the law under such circumstances. As a common carrier of passengers, the "utmost degree of care" is required of a street railway company by the provisions of section 2100 of the Civil Code. The finding that Mrs. Drury boarded the car while "it was standing still," and that she "had hold of the handle-bar," necessarily excludes the possibility that she was injured while attempting to board it when it was in motion. Moreover, the jury was further charged in defendant's instruction number V that " . . . The defendant . . . claims . . . that after the street car had started up from its usual stopping place and *while it was in motion* and in the act of turning the curve . . . the said plaintiff Ethel Drury voluntarily attempted to board the same. If such is the fact the plaintiffs cannot recover." There seems to be no possibility of the jury misunderstanding the correct application of the law declared by these two instructions. They must be read together.

█ The next instruction complained of read in part as follows: "If you find that the defendant . . . brought the 'Crown Hill' car to a standstill, and the plaintiff, Ethel Drury, was attempting to board the car . . . *while said car was standing still*, and the defendant (then) negligently moved said car forward and she was solely injured thereby, then your verdict should be for the plaintiffs."

The preceding discussion regarding the former challenged instruction applies likewise to this charge. It is based on the hypothesis that the car was stationary when it was boarded and that the defendant negligently started the car while the plaintiff Mrs. Drury was still in this dangerous position. This instruction is even more specific than the former one for it authorized a verdict for plaintiff only if her injuries were sustained "solely" by the negligent conduct of the motorman which was specifically described. This instruction was not erroneous. It should be observed that when a street-car regularly stops for passengers at a safety zone which is located at the beginning of an abrupt turn in the course of the track, greater care should be exercised to see that the passengers are safely aboard and that the car is carefully started and operated around the curve, for the reason that the sudden change in the direction in which the

car is traveling is likely to increase the danger to those who may remain on the steps or platform of the car.

The last instruction complained of involves the law applicable to the conduct of one who is suddenly placed in imminent danger of serious injury. It evidently refers to the incident disclosed by the evidence, from which it appears that when Mrs. Drury was thrown from the moving car as it proceeded around the curve, she still clung to the hand-rail and was dragged until her feet were caught and crushed beneath the wheels of the car, while with the exercise of better judgment she might have released her hold of the handle-bar and fallen to a place of greater safety on the pavement. This instruction read in part: "When a person, without fault on his part, is suddenly put in a position of peril by the negligent act of another, even if in bewilderment he runs directly in the very danger which he fears he is not in fault . . . " Standing alone this is technically not a correct statement of the law. It was preceded by another instruction relative to the same subject which was given in greater detail and its application was apparent. When these two instructions are read together, we are inclined to think the jury could not be misled thereby. Particularly is this true in view of the fact that the jury were clearly informed that the plaintiff Ethel Drury could not recover if she was guilty of contributory negligence.

The preceding instruction with which this challenged one was read and in connection with which it must be construed was in the following language so far as it is necessary to quote it: "If you find that the plaintiff, Ethel Drury, got upon the step of the car. . . while said car was at a stand-still, and the defendant then started said car forward and threw her off said car and thus confronted her with danger of losing her life or great bodily harm, then, in an attempt to save herself (by clinging to the handle-bar) she was not required to use the same care that she would otherwise be required to use when not confronted with danger . . . If you find . . . that she used the care that an ordinarily prudent person would under the same or similar circumstances . . . then she was not guilty of . . . contributory negligence . . . " It is apparent that since this instruction was immediately followed by the statement that "in a position of peril . . . if, in bewilderment he runs directly into the very

danger which he fears, he is not in fault," this language may reasonably be assumed to apply to the incident of Mrs. Drury's clinging to the handle-bar when she was thrown from the step of the car. For it was argued that this increased her danger and resulted in the injuries which she sustained. It is not unreasonable to assume that the jury understood the term "she is not in fault" to mean she would not be in fault for the exercise of poor judgment in clinging to the bar, if they should determine that a reasonable person in such an emergency would have done the same. In truth, we are unable to say it was not a most natural and human impulse for one to cling for safety to such a bar, when suddenly thrown from the step of a moving car. Moreover, we are unable to say what the result would have been if she had released her hold of the bar and dropped to the pavement. Her danger might have been thereby increased or it might have been diminished. At least the jury were correctly instructed that in such an emergency one is not held to the same degree of sound reasoning in an effort to extricate himself from a situation of extreme danger. Quoting approvingly from Thompson on Negligence in the case of *Waniorek* v. *United Railroads,* 17 Cal. App., at page 124 [118 Pac. 947, 949], this language, which is appropriate to the situation in the present case, is used:

"Where a passenger upon a railway train is, in consequence of the negligent and unskillful operation of its train by the company, placed in a situation so perilous as to render it seemingly prudent for him to leap from the train . . . and he so leaped and is injured, he is entitled to recover damages, although he would not have been hurt if he had remained on the train."

▮ This doctrine is supported by many authorities, and may not be questioned. It therefore becomes a question for the jury to determine whether the danger of the emergency which confronted Mrs. Drury justified her conduct in clinging to the bar, and if it did, even though she might have saved herself from serious injury by acting differently, still if an ordinarily prudent person would have so acted under similar circumstances she will nevertheless be excused from the penalty of what might otherwise amount to contributory negligence. (*Bilton* v. *Southern Pac. Co.,* 148 Cal. 443 [83 Pac. 440].) Of course, the court was not authorized to

usurp the province of the jury and instruct them definitely that "she was not in fault." But construing this instruction with the language of the preceding one in the light of the evidence indicating that the incident of clinging to the handle-bar was the only circumstance to which these instructions could have been addressed, we think it is reasonable to hold that the jury must have understood this to mean that "she was not in fault" (under such circumstances) for the use of poor judgment in clinging to the handle-bar. At least there is not a miscarriage of justice in this case. Even though this last instruction was in fact technically erroneous, we are of the opinion that the case should not be reversed on that account alone.

Upon examination of the instructions as a whole we find that the jury were fully, fairly and correctly instructed as to the law with relation to the essential issues of the case, including the doctrine of the burden of proof, the negligence of the defendant, the proximate cause of injury and the exemption from liability on the part of the defendant in the event that contributory negligence of the plaintiff was shown. There appears to be no reversible error.

The judgment is affirmed.

Jamison, J., *pro tem.*, and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 18, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 6, 1930.

All the Justices concurred.