[Civ. No. 4085.   Third Appellate District.—February 16, 1931.]

GUST E. JIANOU, Respondent, v. PICKWICK STAGES SYSTEM (a Corporation), Appellant.

B. P. Gibbs, Barry J. Colding, Theodore Hale and Carroll B. Crawford for Appellant.

Eugene S. Selvage for Respondent.

MR. JUSTICE THOMPSON (R. L.) Delivered the Opinion of the Court.—This is an appeal from a judg-

ment for damages for personal injuries which were sustained as a result of an autostage casualty.

The plaintiff was riding as a passenger in the defendant's autostage from Eureka to Crannell. At a point near McKinleyville, the stage suddenly plunged from the highway into a ditch where it turned partly over against an embankment. The plaintiff was thrown violently against a seat in the car. His shoulder was broken. His back and face were cut and bruised. He also received some internal injuries. He suffered much pain and was confined in a hospital for several months for treatment for these injuries. Considerable expense for medical and hospital treatment was incurred by him.

This suit for damages was tried by the court without a jury. Findings were adopted favorable to the plaintiff. A judgment was thereupon rendered in his behalf for the sum of $2,692.50. From this judgment the defendant has appealed.

The appellant contends the court erred in failing to grant its motion for a nonsuit. The amount of the judgment is not questioned. The chief point relied upon for reversal of the judgment is a claim that the evidence fails to support the finding that the defendant was guilty of negligence which proximately caused the injuries sustained by the plaintiff. It is assumed the plaintiff relies upon the doctrine of *res ipsa loquitur*, and that having proved the accident from which the injuries resulted, the burden shifted to the defendant to refute the inference of negligence. The appellant asserts, however, that the plaintiff having alleged the specific acts of negligence upon which he relies, thereby waived the application of the doctrine of *res ipsa loquitur*.

It is the established rule that one who relies upon the doctrine of *res ipsa loquitur* to establish a cause based upon negligence, must allege merely general acts of negligence. Upon the contrary, when one alleges specific acts of negligence upon which he relies, the pleading refutes the theory of *res ipsa loquitur*. The very hypothesis of the doctrine is that the plaintiff has no knowledge of just what caused the accident, and that since the instrumentality by means of which the accident occurred is solely within the control of the defendant, negligence will be inferred upon proof of a *prima facie* case, in the absence of an adequate explanation on the part of the defendant exempting him

from liability. (*Connor* v. *Atchison, T. & S. F. R. Co.*, 189 Cal. 1 [26 A. L. R. 1462, 207 Pac. 378]; *Ingledue* v. *Davidson*, 102 Cal. App. 697 [283 Pac. 837]; 19 Cal. Jur. 713, sec. 127.)

■ We are of the opinion the complaint in the present action does not plead such specific acts of negligence as will relieve the defendant of the application of the doctrine of *res ipsa loquitur*. But, assuming without so deciding, that the allegations of the complaint result in a waiver of that doctrine, and that the plaintiff failed to affirmatively prove specific facts constituting negligence on the part of the defendant which proximately caused the injuries sustained by the plaintiff, this omission is fully supplied by the specific admissions of the defendant which are contained in its answer. The answer affirmatively alleges the precise defects of the autostage wheel as the cause of the accident which were referred to and relied upon by the plaintiff as actionable negligence.

■ The complaint alleges: "The said defendant so carelessly and negligently operated and conducted its said automobile stage that a wheel broke or collapsed thereon." It will be observed that the complaint does not state what specific acts of the defendant caused the wheel to collapse or break. It is merely averred generally that the *negligent conduct of the defendant* caused the wheel to break. The nature of the acts which caused the wheel to break is not even suggested. It is inferred from the language employed that the plaintiff was ignorant of the specific acts of negligence which caused the accident. The doctrine of *res ipsa loquitur* is therefore applicable. (*Lawrence* v. *Pickwick Stages, Inc.*, 68 Cal. App. 494 [229 Pac. 885]; *Leitert* v. *Pickwick Stages, Inc.*, 68 Cal. App. 504 [229 Pac. 889]; 19 Cal. Jur. 714, sec. 129.).

■ Carriers of passengers for hire are required to use the utmost precaution and diligence for their safety. (Sec. 2100, Civ. Code; *Kline* v. *Santa Barbara etc. R. Co.*, 150 Cal. 741, 745 [90 Pac. 125]; *Drury* v. *Los Angeles R. Corp.*, 102 Cal. App. 58, 63 [282 Pac. 525].)

■ The fact that the accident was caused by a broken, defective and disconnected rim on one of the wheels of defendant's autostage, was admitted by the answer, which avers: "For a further, separate and distinct answer and

defense . . . defendant alleges: That the tire-rim on one of the wheels of defendant's said automobile, which (defect) caused the tire to blow out on said automobile stage of defendant became broken and disconnected and was defective, thereby rendering further control of said automobile stage by the operator thereof impossible; that defendant used all reasonable precaution and diligence and the highest degree of care by way of inspecting the said automobile stage, and especially the wheels and tire-rims and tires on said automobile stage immediately prior to the accident . . . but that said defect, or defects were latent and not susceptible to discovery and that said accident was wholly unavoidable on the part of this defendant.''

The cause of the accident is therefore admitted by the pleadings to have been a defective or broken rim of an automobile wheel. This admission is binding on the defendant so far as the actual cause of the accident is concerned. It required no further proof on the part of the plaintiff. (19 Cal. Jur. 688, sec. 111.) ▮ The question of inspection was a matter of defense. The motion for a nonsuit was therefore properly denied.

▮ Having admitted that the accident was caused by a defective or broken rim of a wheel, the question as to whether the defendant exercised due care to discover and repair this defect and thus avoid the accident, was a problem for the court to determine from the evidence adduced. By the rendering of the judgment against the defendant, its affirmative allegation that an adequate inspection of the wheel was made, must be assumed to have been found against the defendant.

▮ A failure of the court to adopt findings upon an issue raised by the answer, is not reversible error, where the finding, if made to support the judgment, would necessarily be adverse to the appellant. (2 Cal. Jur. 1033, sec. 614; *Kling* v. *Gustafson,* 101 Cal. App. 58, 63 [281 Pac. 407].) The court would have been warranted in finding from the evidence that no adequate inspection of the wheel in question was made by the defendant sufficient to purge it of negligence. The only evidence which the record contains on this subject of inspection was furnished by defendant's witness, Shirley Callahan. He testified: ''I am employed by the Pickwick Company . . . to inspect . . . the *tires* on each bus as it comes in. . . . Q. Have you ever worked

manufacturing tires more than two weeks? A. No sir. . . . Q. What did you do to inspect that tire? . . . A. I had the wheels off of the ground and turned the wheels around to inspect the tire to see if there was any cuts on it anywhere, or if it was worn. . . . Q. Now what did you do to inspect the rims? A. You can also inspect the rims as you are turning the wheel around from the outside and you can also get the looks of the rim from the inside. . . . Q. You didn't have the rims off of each of the wheels though, did you? A. No sir. Q. You didn't take the tire off the rims, did you? A. No sir. Q. Now there are machines . . . to test the metal condition or soundness of those rims aren't there? A. I don't know. Q. You are not familiar with that? A. No sir. Q. But at any rate you didn't do that? A. No sir. . . . Q. Did you look at this rim after the collision? A. No sir. Q. Have you seen either one of those rims since? A. No sir. . . . Q. Are you familiar with the tests that they make there to determine whether wheels are sound? A. No sir. Q. Did you make any tests that day to determine whether or not that wheel would dish in or out? A. No sir. Q. (Addressed to Mr. Hale, attorney for the defendant) : Do you happen to have either of the wheels here, or the rims here? A. No sir. I have not them here and I couldn't produce them. I tried to get them, and they are not here. . . . Now, Mr. Callahan . . . you simply checked up the tires, tested the air and looked at the two tires and looked at the rim, isn't that correct? A. Yes.''

It is fair to assume from the foregoing testimony that Shirley Callahan was employed to examine the rubber tires and see that they contained the proper amount of air. All that he did to inspect the metal rims was to observe the portion which was visible as he turned the wheels around. He does not even pretend to have critically examined the rims. He was busily engaged in looking at the rubber tires for incisions or worn places. Absolutely nothing of real value was done to detect any flaws or defects in the metal rims. A little hammering with a mallet might have detected a crack or defect in the rim from the vibration or sound. The court was warranted in holding this superficial examination of the rims was insufficient to constitute adequate inspection thereof. If it be true, as the defendant alleges,

that "the tire-rim on one of the wheels . . . (was) broken and disconnected and defective" so as to cause the blowing out of the tire, it would seem that a casual inspection should have disclosed the defect. At least the evidence regarding the inspection of the wheels fails to furnish that degree of "utmost care and diligence" required of a common carrier of passengers to insure their safety. The broken wheel was not even produced at the trial. Its production might have disclosed a crack in the rim which had existed for some time prior to the accident. We are of the opinion the evidence is ample to support the findings.

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 18, 1931.